### SHENANDOAH ABATTOIR CO. v. SUSTOCK.

(Circuit Court of Appeals, Third Circuit. February 14, 1917.)

No. 2158.

MASTER AND SERVANT ⬤⇒278(13)—INJURIES TO SERVANT—EVIDENCE—REPAIR WORK—UNGUARDED MACHINE.

In an action for injuries to an employé, whose hand was caught in a machine when the guard usually protecting it as required by statute had been removed, evidence *held* to show as a matter of law that the employé was testing the machine in connection with the repair thereof at the time, so that the operation of the machine without the guard was not negligence on the part of the employer.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 961; Dec. Dig. ⬤⇒278(13).]

In Error to the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

Action by William Sustock against the Shenandoah Abattoir Company. Judgment was rendered for the plaintiff, and defendant's motion for new trial denied (232 Fed. 900), and defendant brings error. Reversed and remanded.

E. M. Biddle, of Philadelphia, Pa., for plaintiff in error.

Clarence H. Goldsmith, of Philadelphia, Pa., for defendant in error.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

BUFFINGTON, Circuit Judge. In the court below William Sustock, a citizen of New York, recovered a judgment against the Shenandoah Abattoir Company, a corporation of Pennsylvania. Thereupon the latter brought this writ, alleging error was committed by the court in refusing its request for binding instructions.

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The plaintiff was employed by defendant to operate a machine to clean the intestines used in its sausage factory. To do so, the intestines were inserted by the workmen between a slow revolving drum and a fast revolving spindle. While so inserting one, the plaintiff's hand was caught, drawn into the machine, and permanently injured. The alleged negligence of defendant, involved in the issue before us, was the absence of a guard on the machine when plaintiff was injured. Of the duty of the defendant, under the Pennsylvania statute (Act May 2, 1905 [P. L. 355] § 11), the pertinent extract from which is quoted on the margin,[1] to place a guard on this machine, and of the fact that it did furnish such guard, there is no question. The trouble arose in an interim when the guard was removed while the machine was being repaired. The proofs showed that before the accident the spindle and drum had gotten out of proper adjustment and the machine worked badly. A machinist, whose duty it was to adjust the machine, had been called in and was at work adjusting the bearings of the drum and spindle when the accident occurred. To make such adjustment, it was necessary to remove the guard and this had been done. The plaintiff, who did several kinds of work about the factory, but whose regular work was at this machine, came into the room and, while the mechanic was readjusting the bearings of the unguarded machine, attempted to run an intestine through it and was injured.

The legal side of this situation was properly summed up by the trial judge in these words:

"Now, the question for you to determine, under all the evidence in this case, all the evidence upon the part of the plaintiff and all the evidence upon the part of the defendant, is as to just what this man was doing. Was he operating this machine as a part of the ordinary work of that plant? or was he testing this machine as a part of the ordinary work of that plant? or was he testing this machine as a part of the work of the repair and adjustment of the machine, because I say to you as a matter of law that if at that time what he was directed to do and what he did do was the operation of this machine as a part of the business of the plant, there is evidence before you from which you can find that the defendant was guilty of negligence, and therefore responsible for the plaintiff's injury, because of the operation of that machine without a guard over these blades or paddles. But I say to you also as a matter of law that if that was not the work that was being done, but the work that was being done was a part of the repairs to the machine and the adjustment of it, and a mere testing of its operation to see whether or not the machine had been properly repaired and properly adjusted, then the absence of the guard is no evidence in this case on which you would be justified in finding the defendant to be guilty of negligence."

Of these instructions, as a correct statement of the law in the abstract, the defendant does not complain if the facts were such as to warrant the submission of that question to the jury. What it does complain of is that the evidence before the court unmistakably showed that Sustock was helping adjust the machine by the test of running an intestine through, and was not engaged in his regular work when this accident happened. If such be the case, if the facts were such

[1] "All vats, pans, saws, planers, cogs, gearing, belting, shafting, set screws, grindstones, emery wheels, flywheels, and machinery of every description shall be properly guarded."

as to unmistakably show that the machine was being repaired, and that Sustock was working at repair and not regular work, then the court erred in denying the request of the defendant for binding instructions. We have carefully studied the entire proofs, and from such study we agree that the evidence so clearly showed that Sustock was engaged in repair work that no other inference could be reasonably drawn therefrom. They show that Sustock had worked on the machine for a long time, that on this particular day it had gotten out of working order, and that Lord, the mechanic whose duty it was to adjust it, was doing so. While Lord was engaged in such adjustment, Sustock came into the room where the machine was and told Stuckis, the foreman, who was testing the machine as Lord adjusted it, that he was wanted in another room. The testimony of Sustock shows what followed:

"Q. You did go into the gut room, and what did you see there? Did you go up to this machine? A. I saw John Stuckis standing alongside of the machine with a piece of intestine in his hand. Q. The machine that you were afterwards hurt on? A. Yes, sir. Q. What was Stuckis doing at that time? A. He was standing there with the intestine in his hand. I think he was about to insert it into the machine. Q. In the way that you have described? A. Yes, sir. Q. Who else were there at the time? A. John Lord and Dick Jones. Q. Who was Dick Jones? That is, what did he do around there? What was his work? A. He was fireman, I think, at that time. Q. That is the time I speak of. A. He was fireman. Q. Who was Lord? What did he do? A. He was mechanic of the building. Q. Did you have anything to do with the machinery there, or repairing it, or things of that kind, during the time you were there? A. Whenever I got orders to do it. Q. Were you a machinist? A. No, sir. Q. Did you ever get any orders to repair machinery? A. No, sir. Q. This man Lord was what? A. Mechanic. Q. Did he slaughter, or feed machines, or anything of that kind, at the time, or about the time, of this accident? A. No, sir; he was repairing all the machinery in the building. Q. Did he give his entire time to that work? A. Yes, sir. Q. And he was at this machine, you say, when you came in? A. Yes, sir. Q. We will begin now with what you said to Stuckis and what he said to you at the time you say you saw him about to put a gut into the machine, and the spindles I think you said were revolving at that time? A. Yes, sir. I told John Stuckis that the boy didn't have anything to do. John Stuckis, or Mr. Stuckis, said to me, 'You stay here, Bill, and try the machine, and see how it will clean,' and he disappeared. He went into the other room to give the boys work. Q. What did he do with this gut he had in his hand? A. He laid it down alongside of the machine. Q. How did he lay it down? A. He wrapped it on a thumb screw or a bolt that stands between the machine on the side here (indicating). Q. At that time was there any guard on either of the spindles? A. No, sir. Q. After telling you this he went from the room? Is that right? A. Yes, sir. Q. And at that time was there any tub of guts there near the machine? A. Yes, sir; there was. Q. What did you do then, or say? A. I took the gut to insert it into the machine. Q. The gut that he had laid down? A. Yes, sir. Q. Did you say anything at the time? A. When I inserted it into the machine it didn't *clean very well.* The machine didn't clean very well, and I told Lord that it *wasn't cleaning good,* and then he was on the other side of the machine with a *monkey wrench.* I don't know what he did. I don't know what he was doing with the monkey wrench. I think he was *adjusting it.* Then John Lord said to me, 'Try another one in.' I took another piece and inserted it into the machine, and it *still didn't clean, very well.* Q. Did you say anything to anybody about the machine, or the spindles, or the covers, or anything at that time? A. I told John Lord that it *wasn't cleaning good.* He was standing on the other side of the machine.

Then he told me to try to put another piece into the machine. The third time I put a piece in my hand got fastened in the machine. Q. Did you say—

"Mr. Biddle: I decidedly think that on an important point of the case like this that should not be done.

"Mr. Robinson: Q. Will you tell us every word that was said about everything between you and Lord just before the accident? A. Before I started to operate the machine, I saw the protections were taken off, and I told John Lord to put the protections on the machine. I said, 'The water will splash.' John Lord said to me, he said: 'To hell with the protections. *We can run her without the protections.* It ain't necessary to have them on there, anyhow.' He said, '*I lost the bolts.*' Q. That was before you began at all, was it? A. Yes, sir. Q. And you inserted one piece in, you said, and you saw that it did not clean well? A. Yes, sir. Q. And you stated so to him, did you? A. Yes, sir. Q. And then he said, 'Try another'? A. Yes, sir. Q. Had you ever been told at any time before this day to take orders from Mr. Lord at any time? A. Yes, sir. When I first started there, every time I was sent to work with John Lord, I was told to take orders from him. Q. Had Lord been there during the two years that you had been there? A. Yes, sir. * * * Q. I am going to ask you to tell the court, and jury just how your hand was hurt. A. My hand was fastened into the machine when I was inserting these intestines into the machine the third time. Q. That is the third intestine you put in? Is that what you mean? A. Yes, sir. After I told John Lord the second time that it had not been cleaning very well, *John Lord adjusted the machine some more.* I don't know whether he lowered the spindles or raised the drum, *but it seemed that the gripping was more tighter than it had been the first time, and as soon as I inserted the gut* into the machine it drew my hand right in to the spindles."

From this and other portions of his own testimony, it is therefore clear that Sustock took up the testing work which Stuckis stopped when he was called away, and he was injured while this machine was being repaired. The uncontradicted testimony on the part of the defendant also showed he was familiar with the working of this machine, with the manner of repairing and testing it, and that he was accustomed to work on it regularly, and at times to himself take it apart to repair and clean it. It is therefore apparent that there was no basis of fact or proof which warranted submitting to the jury the question of whether Sustock was engaged in regular, and not in repair, work when injured. The facts simply showed he was engaged in repair work.

The judgment below is reversed, and the cause is remanded for further proceedings.

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes